IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LOAN DUONG, personal representative for the Estate of HIEN TRUNG HUA, Deceased, | NO. 1:25-cv-3057 |
| Plaintiff, | DECLARATION OF JOHN E. JUSTICE RE VERIFICATION OF STATE COURT RECORD |
| vs. | |
| WELLPATH, LLC a Delaware Corporation; YAKIMA COUNTY, a Washington State County; YCDOC Officer C Kass; YCDOC J. Nichols; YCDOC Officer J. Contreras; YCDOC Officer Brian O. Brulotte; YCDOC Officer Damian Marquis Spencer; YCDOC Officer Erick Gonzalez-Guzman; YCDOC Officer Alejandro Roman Estrada; YCDOC Corporal Todd Ernest Cooley; YCDOC Officer Martin Dale Gohl; YCDOC Officer Damian Gil; YCDOC Sergeant Freeburg, | |
| Defendants. | |

PURSUANT TO 28 U.S.C. § 1746 (1976), John E. Justice declares as follows:

    1.    I am the attorney of record for Yakima County defendants in the above-entitled action. I am over the age of majority and competent to testify to the matters stated herein from personal knowledge.

    2.    Attached hereto are true and correct copies of all records and proceedings on file in the Superior Court action *Estate of Hien Trung Hua v. Yakima County, et al,* Yakima County Superior Court Cause No. 25-2-01311-39. Those documents are as follows:

DECLARATION OF JOHN E. JUSTICE
RE VERIFICATION OF STATE COURT RECORD – 1
No.: 1:25-cv-3057

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480 FAX: (360) 357-3511*

| Dated | Title of Document | No. of Pages |
|-------|-------------------|--------------|
| 04/24/25 | Summons and Complaint | 44 |
| 04/28/25 | Notice of Appearance | 2 |
| 04/30/25 | Docket Report | 4 |

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated this 30th day of April, 2025.

LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.

*/s/ John E. Justice*

John E. Justice, WSBA No. 23042
Attorney for Yakima County Defendants
P.O. Box 11880, Olympia, WA 98508
Phone:  (360) 754-3480 Fax: 360-357-3511
Email: jjustice@lldkb.com

**DECLARATION OF JOHN E. JUSTICE**
**RE VERIFICATION OF STATE COURT RECORD – 2**
No.: 1:25-cv-3057

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*



**FILED**

APR 24 2025

*Billie A. Maggard*
YAKIMA COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR YAKIMA COUNTY

LOAN DUONG, personal representative for the
Estate of HIEN TRUNG HUA, Deceased,

     Plaintiff,

v.

WELLPATH, LLC a Delaware Corporation;
YAKIMA COUNTY, a Washington State
County; YCDOC Officer C Kass; YCDOC
J. Nichols; YCDOC Officer J. Contreras;
YCDOC Officer Brian O. Brulotte; YCDOC
Officer Damian Marquis Spencer; YCDOC
Officer Erick Gonzalez-Guzman; YCDOC
Officer Alejandro Roman Estrada; YCDOC
Corporal Todd Ernest Cooley; YCDOC
Officer Martin Dale Gohl; YCDOC Officer
Damian Gil; YCDOC Sergeant Freeburg,

     Defendants,

Cause No: **2 5 2 0 1 3 1 1 3 9**

SUMMONS

TO:  YAKIMA COUNTY SUPERIOR COURT CLERK

TO:  WELLPATH LLC

TO:  YAKIMA COUNTY

TO:  Officer C. Kass

TO:  Officer J. Nichols

TO: Officer J. Contreras

TO: Officer Brian Brulotte

TO: Officer Damian Spencer

TO: Officer Erick Gonzalez-Guzman

TO: Officer: Alejandro Roman Estrada

*Summons - 1*

*Hall & Gilliland Law Offices*
*1111 W. Yakima Ave.*
*Yakima, WA 98902*
*PHONE (509) 452-8120*
*FAX (509) 454-5011*

**RECEIVED**

APR 24 2025

Yakima County Elections

TO: Officer Corporal Todd Cooley
TO: Officer Martin Gohl
TO: Officer Damian Gil
TO: Sergeant Freeburg

     A lawsuit has been started against you in the above-entitled court by the above-named Plaintiff. Plaintiff's claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

     In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for plaintiff within twenty (20) days after the service of this Summons (or within sixty (60) days after the service of this Summons if served out of the State of Washington) excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what it asks for because you have not responded. If you serve a Notice of Appearance on the undersigned attorney, you are entitled to a notice before a default plaintiff may be entered.

     You may demand that plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon plaintiff. Within fourteen (14) days after you serve the demand, plaintiff must file this lawsuit with the court, or the service on you of this Summons and Complaint will be void.

     If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

     This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

     DATED this 24th day of April, 2025.

RICHARD GILLILAND, WSBA# 40474
Attorney for Plaintiff

Hall & Gilliland Law Offices
1111 W. Yakima Ave.
Yakima, WA 98902
PHONE (509) 452-8120
FAX (509) 454-5011



**FILED**

APR 24 2025

*Billie A. Maggard*
**YAKIMA COUNTY CLERK**

## THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## IN AND FOR THE COUNTY OF YAKIMA

| | |
|---|---|
| LOAN DUONG, personal representative for the Estate of HIEN TRUNG HUA, Deceased,<br><br>      Plaintiff,<br><br>v.<br><br>WELLPATH, LLC a Delaware Corporation; YAKIMA COUNTY, a Washington State County; YCDOC Director Jeremy Welch; YCDOC Officer C Kass; YCDOC J. Nichols; YCDOC Officer J. Contreras; YCDOC Officer Brian O. Brulotte; YCDOC Officer Damian Marquis Spencer; YCDOC Officer Erick Gonzalez-Guzman; YCDOC Officer Alejandro Roman Estrada; YCDOC Corporal Todd Ernest Cooley; YCDOC Officer Martin Dale Gohl; YCDOC Officer Damian Gil; YCDOC Sergeant Freeburg,<br><br>      Defendants. | NO. 2 5 2 0 1 3 1 1 3 9<br><br>**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPLEMENTAL STATE CLAIMS**<br><br>**DEMAND FOR TRIAL BY JURY** |

COMES NOW Plaintiff, by and through his attorneys of record, Richard D. Gilliland and Timothy James Hall of Hall and Gilliland PLLC and alleges as follows:

## I. INTRODUCTION

1. On November 18, 2023, Loan Duong called 911 because her son Hien Trung Hua (then age 42) was having a mental health crisis and had kicked her. Mr. Hua was subsequently booked into the Yakima County Jail for a charge of Fourth Degree Assault, Domestic Violence after

COMPLAINT
- 1

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

Yakima County Jail for a charge of Fourth Degree Assault, Domestic Violence after booking was refused by the Yakima City Jail due to Mr. Hua's Mental Health status.

2. Mr. Hua had a history of severe mental illnesses including schizophrenia, anxiety, depression, and a diagnosis for bi-polar disorder that was known to all Defendants at the time of his booking. In addition, Mr. Hua was known to Defendants to have multiple medical issues including diabetes and hypertension. During booking procedures, while in a state of mental health crisis, Mr. Hua was not entirely cooperative with Yakima County Department of Corrections (YCDOC) Officers. Instead of de-escalating the situation, multiple officers assaulted Mr. Hua.

3. Mr. Hua was in custody at the Yakima County Jail for approximately five days, during which time Mr. Hua was not taken to see a doctor, a nurse practitioner, a physician assistant, a nurse, or any type of mental health provider for a medical or mental health checkup of any sort. Mr. Hua was originally placed in an isolation cell block, but was subsequently moved to a general population unit. Inmates subsequently communicated with staff and said Mr. Hua needed to be moved for his own safety.

4. Jail staff entered the cell block, almost immediately pepper sprayed Mr. Hua, chased Mr. Hua around the cell block until Mr. Hua fell down at which point he was jumped, tackled, and pinned by upwards of eight YCDOC officers. During this process, Mr. Hua was held face down on the concrete floor with YCDOC officers' knees and bodyweight on Mr. Hua's upper body restricting his ability to breath and putting additional pressure on his heart, all while his hands were cuffed behind his back, his legs were cuffed, and a chain was connected between the handcuffs and leg shackles.

5. Three guards then began carrying Mr. Hua to a different location in the jail with two guards

holding Mr. Hua under his elbows behind his back, and a third holding the chain near Mr. Hua's feet. This was unquestionably an extremely painful process for Mr. Hua as demonstrated by the gash he received above his ankle from one of the shackles. While traversing through the jail, Mr. Hua's feet began to interfere with the walking of the guard holding the chain near Mr. Hua's feet. Instead of pausing and setting Mr. Hua down or some other de-escalation technique, the guard began punching Mr. Hua in the lower legs. When this did not successfully dislodge Mr. Hua's feet, the front two guards began delivering knee strikes to Mr. Hua's rib cage. Mr. Hua was non-verbal throughout this process, and was very likely simply attempting to communicate physical distress.

6. The guards then placed Mr. Hua prone on the floor, held him down, and placed a spit hood over his head. Throughout this process, what YCDOC officers believed was Mr. Hua spitting on them, was possibly another attempt by Mr. Hua to communicate as he was in severe medical distress and could not speak. Mr. Hua stopped breathing, and his heart stopped beating within two minutes of the knee strikes. Mr. Hua passed away in the ambulance on the way to the hospital after being briefly revived.

7. Mr. Hua should still be alive today. His death was preventable. Through their recklessness, gross negligence, and/or malicious intent, Defendants caused substantial suffering to Hien Hua, and these actions directly resulted in his death. This action seeks damages for Defendants' violations of Mr. Hua's Eight, and Fourteenth Amendment rights, and for Defendants' violations of the accepted standards of care leading up to, surrounding, and causing Mr. Hua's death.

## II. SATISFACTION OF RCW 4.96 TORT CLAIMS NOTICE

8. In compliance with RCW 4.96.020, Plaintiff submitted a tort claim to Yakima County

COMPLAINT
- 3

Prosecuting Attorney, Yakima County's RCW 4.96.020(2) designated agent.  More than 60 days have passed since the submission of this claim, and all statutory prerequisites for filing state law claims in this lawsuit against Yakima County have been met.

## III. JURISDICTION AND VENUE

9.  This Court has jurisdiction and venue is proper in Yakima County Superior Court, because the named defendants are located in Yakima County, Washington, and the acts alleged herein occurred in Yakima County, State of Washington.

## IV. PARTIES

10. Plaintiff Loan Duong is the duly appointed personal representative of the Estate of Hien Trung Hua, deceased, and is a resident of Yakima County, State of Washington.

11. Hien Hua was born in Ca Mau, Vietnam, on November 30, 1981.  At the time of his death, Hien Hua was a citizen and resident of the State of Washington.  He is survived by his mother, a sister, a cousin, and other relatives.

12. Defendant, Yakima County, is a public "agency" within the meaning of RCW 42.56.010(1).  Defendant is located within the State of Washington and has its physical existence and operation within Yakima County, State of Washington.  At all times herein pertinent, Hien Hua was a pretrial detainee in the Yakima County Jail, which is operated by the YCDOC—a department of Defendant Yakima County.

13. Wellpath, LLC ("Wellpath") is a Delaware corporation authorized to do business in the State of Washington.  Its business is providing medical and mental health services in jails and prisons nationally, one of which is the Yakima County Jail.  Wellpath was formed in November 2018 as a result of a merger between Correct Care Solutions, LLC ("CCS") and Correctional

Medical Group Companies. CCS was a Kansas corporation authorized to do business in the State of Washington. In July-September 2018, CCS was providing medical and mental health services at the Yakima County Jail. At all times herein pertinent, Wellpath and CCS were acting under color of state law. Throughout this Complaint they will be referred to as Wellpath.

14. C. Kass was and/or is a YCDOC officer. At all times pertinent, Officer Kass was an agent of Yakima County, actual or implied, acting within the course and scope of his agency. Officer Kass was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services. Officer Kass further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail. On information and belief, he is a citizen and resident of the State of Washington.

15. J. Nichols was and/or is a YCDOC officer. At all times pertinent, Officer Nichols was an agent of Yakima County, actual or implied, acting within the course and scope of his agency. Officer Nichols was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services. Officer Nichols further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail. On information and belief, he is a citizen and resident of the State of Washington.

16. J. Contreras was and/or is a YCDOC officer. At all times pertinent, Officer Contreras was an agent of Yakima County, actual or implied, acting within the course and scope of his agency. Officer Contreras was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services. Officer Contreras further had an affirmative duty to not cause unlawful

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

physical harm to people housed in the Yakima County Jail. On information and belief, he is a citizen and resident of the State of Washington.

17. Brian O. Brulotte was and/or is a YCDOC officer. At all times pertinent, Officer Brulotte was an agent of Yakima County, actual or implied, acting within the course and scope of his agency. Officer Brulotte was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services. Officer Brulotte further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail. On information and belief, he is a citizen and resident of the State of Washington.

18. Damien Marquis Spencer was and/or is a YCDOC officer. At all times pertinent, Officer Spencer was an agent of Yakima County, actual or implied, acting within the course and scope of his agency. Officer Spencer was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services. Officer Spencer further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail. On information and belief, he is a citizen and resident of the State of Washington.

19. Erick Gonzalez-Guzman was and/or is a YCDOC officer. At all times pertinent, Officer Gonzalez-Guzman was an agent of Yakima County, actual or implied, acting within the course and scope of his agency. Officer Gonzalez-Guzman was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services. Officer Gonzalez-Guzman further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail. On information and belief, he is a citizen and resident of the State of

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

Washington.

20. Alejandro Roman Estrada was and/or is a YCDOC officer.  At all times pertinent, Officer Estrada was an agent of Yakima County, actual or implied, acting within the course and scope of his agency.  Officer Estrada was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services.  Officer Estrada further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail.  On information and belief, he is a citizen and resident of the State of Washington.

21. Corporal Todd Ernest Cooley was and/or is a YCDOC officer.  At all times pertinent, Corporal Cooley was an agent of Yakima County, actual or implied, acting within the course and scope of his agency.  Corporal Cooley was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services.  Corporal Cooley further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail and to prevent those working under him from doing so.  On information and belief, he is a citizen and resident of the State of Washington.

22. Martin Dale Gohl was and/or is a YCDOC officer.  At all times pertinent, Officer Gohl was an agent of Yakima County, actual or implied, acting within the course and scope of his agency.  Officer Gohl was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services.  Officer Gohl further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail.  On information and belief, he is a citizen and resident of the State of Washington.

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA  98902
Phone (509) 452-8120 • Fax (509) 454-5011

23. Damian Gil was and/or is a YCDOC officer. At all times pertinent, Officer Gil was an agent of Yakima County, actual or implied, acting within the course and scope of his agency. Officer Gil was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023, were receiving constitutionally adequate medical and mental health services. Officer Gil further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail. On information and belief, he is a citizen and resident of the State of Washington.

24. Sergeant Freeburg was and/or is a YCDOC officer. At all times pertinent, Sergeant Freeburg was an agent of Yakima County, actual or implied, acting within the course and scope of her agency. Sergeant Freeburg was responsible for ensuring that the people being held at the Yakima County Jail in November of 2023 were receiving constitutionally adequate medical and mental health services. Sergeant Freeburg further had an affirmative duty to not cause unlawful physical harm to people housed in the Yakima County Jail, and to prevent those working under her from doing so. On information and belief, she is a citizen and resident of the State of Washington.

## V. FACTUAL ALLEGATIONS

25. The Yakima County Jail houses pretrial detainees and persons convicted of crimes. Yakima County is obligated by state and federal law to provide medical and mental heath care for persons detained in the Yakima County Jail. Yakima County's duty to provide medical and mental health care is a nondelegable duty.

26. Yakima County Department of Corrections (YCDOC) when used herein, refers to the Yakima County Department that operates the Yakima County Jail.

### A. Yakima County Contracts with Wellpath to Provide Medical and Mental Health

COMPLAINT
- 8

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

**Care**

27. At all times pertinent to this Complaint, Yakima County contracted with Wellpath to provide medical and mental health care to pretrial detainees and persons convicted of crimes housed in the Yakima County Jail. Yakima County pays Wellpath for these services.

28. On information and belief, Wellpath promised that its services would meet or exceed the standards established by the National Commission on Correctional Health Care ("NCCHC"). The NCCHC publishes "Standards for Health Services in Jails" ("NCCHC Jail Standards").

**B. Jail health care standards**

29. NCCHC Jail Standard J-A-01 states that it is "essential" that "[i]nmates have access to care for their serious medical, dental, and mental health needs." The standard provides that "[a]ccess to care means that, in a timely manner, a patient is seen by a qualified health care professional, is rendered a clinical judgment, and receives care that is ordered." The standard notes that "[i]nmates must have access to care to meet their serious health needs. This is the fundamental principle on which all National Commission on Correctional Health Care standards are based and is the basic principle established by the U.S. Supreme Court in the 1976 landmark case *Estelle v. Gamble*." The standard gives several examples of "[u]nreasonable barriers to inmates' access to health services," including "[h]aving an understaffed, underfunded, or poorly organized system with the result that it is not able to provide appropriate and timely access to care."

30. Defendant's failed to provide the care required by NCCHS Jail Standard J-A-01.

31. NCCHC Jail Standard J-E-02 states that it is "essential" that "[s]creening is performed on all inmates upon arrival at the intake facility to ensure that emergent and urgent health needs are met." The standard provides that "[r]eception personnel ensure that persons who are * * *

COMPLAINT
- 9

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

mentally unstable * * * are referred immediately for care and medical clearance into the facility." The term "medical clearance" is defined as "a documented clinical assessment of medical, dental, and mental status before an individual is admitted into the facility. The medical clearance may come from on-site health staff or may require sending the individual to the hospital emergency room." The standard notes that "[i]nmates with mental disorders are often unable to give complete or accurate information in response to health status inquiries. Therefore, it is good practice for mental health staff to be involved in training staff who do the intake screening."

32. Defendant's failed to provide the care required by NCCHS Jail Standard J-E-02.

33. NCCHC Jail Standard J-E-04 states that it is "essential" that "[i]nmates receive initial health assessments." The standard provides that the initial health assessment should take place within 14 days of admission into the jail and should be done by a qualified health care professional. The standard explains that "[t]he health assessment is the process whereby an individual's health status is evaluated, including questioning the patient about symptoms. The extent of the health assessment is defined by the responsible physician but should include at least the steps noted in this standard."

34. Defendant's failed to provide the care required by NCCHS Jail Standard J-E-04.

35. NCCHC Jail Standard J-E-05 states that it is "essential" that "[m]ental health screening is performed to ensure that urgent mental health needs are met." The standard provides that the mental health assessment should take place "as soon as possible but no later than 14 calendar days after admission" into the jail and should be done by a qualified mental health professional or a qualified health care professional who has received documented training. The standard notes that "[i]nmates who screen positive for mental health problems are referred to qualified

COMPLAINT
- 10

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

mental health professionals for further evaluation" within 30 days "or sooner if clinically indicated." The standard explains that "[q]ualified mental health professionals include psychiatrists, psychologists, psychiatric social workers, psychiatric nurses, and others who by their education, credentials, and experience are permitted by law to evaluate and care for the mental health needs of patients."

36. Defendant's failed to provide the care required by NCCHS Jail Standard J-E-05.

37. NCCHC Jail Standard J-F-01 states that it is "essential" that "[p]atients with chronic disease, other significant health conditions, and disabilities receive ongoing multidisciplinary care aligned with evidence-based standards." The standard provides that mood disorders and psychotic disorders are examples of the types of health conditions that fall under this standard.

38. Defendant's failed to provide the care required by NCCHS Jail Standard J-F-01.

39. NCCHC Jail Standard J-F-03 states that it is "essential" that "[m]ental health services are available for all inmates who require them." The standard explains that "[i]n the correctional setting, as in most other environments, the immediate objective of mental health treatment is to alleviate symptoms of mental disorders and prevent relapses in order to sustain patients' ability to function safely in their environment."

40. Defendant's failed to provide the care required by NCCHS Jail Standard J-F-03.

41. NCCHC Jail Standard J-G-02 states that it is "essential" that "[a]ny practice of segregation should not adversely affect an inmate's health." The standard provides that, "[u]pon notification that an inmate has been placed in segregation, [a] qualified health care professional reviews the inmate's health record." The standard explains that "[c]hecks by health staff must be done to ensure that each segregated inmate has the opportunity to request care for medical, dental, or mental health problems. These visits also enable health staff to ascertain the inmate's

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

general medical and mental health status. Inmates often experience irritability, anxiety, or a dysphoric mood within weeks of placement in social isolation." The standard cautions that "[s]pecial attention should be given to vulnerable populations, such as adolescents and the mentally ill." The standard also warns that "[d]ue to the possibility of injury and depression during isolation, the evaluations by health staff should include notation of bruises or other trauma markings, comments regarding the inmate's attitude and outlook (particularly as they might relate to suicidal ideation), and any health complaints."

42. Defendant's failed to provide the care required by NCCHS Jail Standard J-G-02.

43. The NCCHC also publishes "Standards for Mental Health Services in Correctional Facilities" ("NCCHC Mental Health Standards").

44. NCCHC Mental Health Standard MH-E-07 states it is "essential" that "[t]he mental health of segregated inmates is monitored regularly." The standard provides in relevant part:

   a. "On notification that an inmate is placed in segregation, mental health staff reviews the inmate's mental health record to determine whether existing mental health needs contraindicate the placement or require accommodation. Such review is documented in the clinical record;"
   b. "For inmates housed in segregation, qualified mental health professionals provide mental health services according to established treatment plans and respond in a timely manner to referrals;" and
   c. "Inmates who are segregated and have limited contact with staff or other inmates are monitored 3 days a week by a medical or qualified mental health professional."

The standard explains that "[t]he intent of this standard is that mental health staff monitor segregated inmates for signs of mental or physical decompensation. Persons in segregated environments are vulnerable to mental illness and often experience irritability, anxiety, or depression." The standard notes that "[i]t is important to coordinate procedures to ensure that segregated inmates who are on the mental health caseload are appropriately monitored and managed." The standard warns that "[b]ecause segregation can exacerbate preexisting

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

conditions, staff should be extra cautious when placing vulnerable inmates in segregation." The standard also cautions that "[m]ental health staff should provide medical and custody staff with clear guidelines regarding behaviors, verbal statements, medication refusals, and cell conditions that require a mental health referral." The standard points out that "[m]any correctional systems screen for the presence of serious mental illness so that such inmates are not eligible for * * * long-term placement in segregation."

45. Defendant's failed to provide the care required by NCCHS Jail Mental Health Standard MH-E-07.

46. Defendants consistently fail to meet these and other NCCHS standards, and specifically failed to meet them with Mr. Hua, which was the actual and proximate cause of his death.

## C. Case Specific Allegations

47. All paragraphs in this section will be in chronological order to as great an extent as possible. If a date is not mentioned, the action took place on the same date as the date from the last dated paragraph.

48. On November 18, 2023, a neighbor of Plaintiff Loan Duong called 911 because Plaintiff's son, Hien Hua was having a mental health crisis that was causing him to get physical with Plaintiff.

49. Upon arrival at Ms. Duong's home, she informed officers that Mr. Hua had just been to the hospital for mental health issues. She also specifically informed officers that Mr. Hua "doesn't know what he is doing", that he had medication for being bi-polar, but he wasn't taking his medications.

50. During her discussions with the police, Ms. Duong emphasized how much she loved her son, which is why she had taken care of him for so many years. She also told the officers how her

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

life is spent for Mr. Hua. She then asked for, and received assurances that Mr. Hua would be

ok in jail. She also stated how she did not want Mr. Hua to go to jail.

51. Ms. Duong provided the police with Mr. Hua's medications.

52. During his contact with the police, Mr. Hua made numerous statements that made it clear to

police that Mr. Hua was having severe mental health issues including claiming that his mother

had asked "the witch" to kick her, and that two retired police officers were trying to assassinate

him because he was looking for a triple whopper at Burger King.

53. While officers drove Mr. Hua to the Yakima City Police Department, he began talking to

himself, further demonstrating his ongoing mental health issues. Officers suspected that based

on his conduct Mr. Hua was schizophrenic, along with being bi-polar.

54. Upon arrival at the Yakima City Jail, jail staff informed the officers that they could not house

Mr. Hua due to his poor mental health condition.

55. Following the Yakima City Jail declining to house Mr. Hua, officers transported Mr. Hua to

the Yakima County Jail where he was booked on a Fourth Degree Assault—DV charge.

56. In his booking intake form, Wellpath indicated that Mr. Hua needed a medical and mental

health referral.

57. Defendants entirely failed to follow up on these needed referrals.

58. On his YCDOC screening form completed on November 18, 2023, at 8:59 pm, YCDOC

Officer Juan Morales noted that Mr. Hua had active mental health medications and that Mr.

Hua would be referred to Jail Mental Health.

59. Mr. Hua was never seen by mental health services while in YCDOC custody despite multiple

referrals.

COMPLAINT
- 14

60. During booking, due to his mental health issues, Mr. Hua was Hua was highly agitated and not completely cooperative with booking procedures. In response, multiple YCDOC officers assaulted Mr. Hua, the extent of which is not entirely known because YCDOC Officers dragged Mr. Hua into a cell outside the view of jail cameras during this process and the involved officers failed to provide details of the incident. At a minimum according to their own reports, Mr. Hua was punched in the leg and left side by YCDOC Officer C. Kass, had his wrist twisted painfully by YCDOC Officer J. Nichols, and was punched in the abdomen by YCDOC Officer J. Contreras.

61. Despite YCDOC officers only claiming the above listed abuse, Mr. Hua's booking photo conclusively shows that that Mr. Hua was beaten much more extensively at booking than admitted by the involved officers considering in his booking photo Mr. Hua's head and face show his beating caused at a minimum the following:

   a. Concrete rash on the end of Mr. Hua's nose;

   b. A very large swollen bruise on Mr. Hua's upper left cheek which was still forming at the time of the photo;

   c. A cut on Mr. Hua's chin; and

   d. A bruise forming on Mr. Hua's right ear.

62. Considering the small percentage of his body that is shown in the booking photo, Mr. Hua's injuries from the beating he was given by YCDOC officers at booking were likely extensive.

63. Following this assault and battery, according to YCDOC Officer J. Contreras, Mr. Hua's lips began turning blue and Mr. Hua began talking nonsense.

64. Officer Morales also admitted in the YCDOC screening form that force was used on Mr. Hua during the initial booking process.

COMPLAINT
- 15

65. Also upon booking, or soon thereafter, Defendants became aware that Mr. Hua had Type 2 diabetes along with musculoskeletal idiopathic gout.

66. Mr. Hua was initially housed in isolation.

67. On November 19, 2023, at 1:17 am, Wellpath employee Raul Roldan Estela E-signed a "Staff Referral Form – Medical" for a "Routine" checkup with a "Mid-level Provider" for Mr. Hua with the basis being "Diabetic, HBP gout and MH issues". Under "Additional Information" Mr. Roldan stated "Please assess".

68. This referral was never acted upon by Defendants.

69. At 1:17 am, Wellpath employee Raul Roldan Estela E-signed a "Staff Referral Form – Mental Health" for a "Routine" checkup with a "MH Professional" for Mr. Hua with the basis being "Medication bridged" and additional information being "Please review".

70. Mr. Hua was provided with no medical care, nor even a checkup following the beating he received during the booking process.

71. At 2:03 am, Mr. Hua was moved from the booking holding area at the Yakima County Jail to unit 4A.

72. On November 19, 2023, at 8:37 am, Mr. Hua did not receive his medications because, according to the Wellpath form, he stated "no".

73. Following every incident where Mr. Hua did not take necessary medications, Defendant's should have had Mr. Hua seen by a medical and/or mental health professional to assess Mr. Hua's medical and/or mental health. Defendant's failed to do this on even a single occasion.

74. On a Wellpath screening form dated November 19, 2023, Wellpath recommended Mr. Hua be placed in general population despite:

   a.  Mr. Hua's serious health issues;

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

b. Mr. Hua's current and extensive mental health issues;

c. Mr. Hua having refused his medications earlier in the day;

d. Wellpath noting that Mr. Hua needed both medical and mental health referrals;

e. This Wellpath form being completed by asking questions from Mr. Hua, a person who was, at that time, having extreme mental health issues including delusions;

f. Also on Mr. Hua's YCDOC/Class Member Screening form the clinician, listed as Juan Morales, BA stated in his Summary/Recommendations: "Client declined screening. Client presented with an angry affect and rapid speech. During booking process, jail staff was forced to use force on client due to client becoming combative. Client is active in Sx. Records show a Dx of Bipolar Disorder and Cannabis Abuse. Client has active MH meds. Client will be referred to JMH. Client is not a class member."

75. It was negligent, reckless, dangerous, and and/or through incompetent actions that Mr. Hua was placed in general population.

76. On or before November 21, 2023, at 11:32 am, Mr. Hua's Olanzapine medication was received by Defendants at the Yakima County Jail. If Defendants were not already on notice that Mr. Hua had schizophrenia, Mr. Hua being prescribed Olanzapine, which is used to treat schizophrenia, put Defendants on notice of this fact.

77. On or before November 21, 2023, at 11:32 am, Mr. Hua's Citalopram medication was received by Defendants at the Yakima County Jail. Citalopram is used to treat depression and panic attacks. Thus, if Defendants were not already on notice that Mr. Hua suffered from Depression and/or panic attacks, Mr. Hua being prescribed Citalopram put Defendants on notice of this fact.

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

78. On or before November 21, 2023, at 11:32 am, Mr. Hua's Losartan, Spironolactone, and Simvastatin medications were received by Defendants at the Yakima County Jail. If Defendants were not already on notice that Mr. Hua had hypertension, Mr. Hua being prescribed Losartan, Spironolactone, and Simvastatin, which are all used to treat hypertension, put Defendants on notice of this fact.

79. Defendants either knew, or should have known, that vigorous activity is dangerous for a person with hypertension.

80. On November 21, 2023, at 11:32 am, Wellpath employee Michael Schantz E-signed a form titled "Staff Referral Form – Mental Health" requesting a "Routine" appointment with a "Psychiatric Provider" for Mr. Hua. The reason for the referral was listed as "Pt Hua meds were dropped off 11/21/23. Pt has current order for Citalopram HBR 40 mg Tablet "Take 1 tablet by mouth once daily." It is a 90 day supply that was filled on 8/24/23 – falls in the 90 day current order to start bu the bottle is almost full – like it hasn't been taken. Medication was not started…"

81. On November 21, 2023, a Wellpath employee spent approximately 10 minutes reviewing Mr. Hua's inmate chart and determined that Mr. Hua should continue to take Olanzapine, and that a follow-up was not needed for "Week(s)".

82. On November 22, 2023, Mr. Hua did not receive his medications because he "did not come to hatch".

83. By the morning of November 24, 2023, Mr. Hua had been placed in general population in the Annex of the Yakima County Jail, C tank.

84. On November 24, 2023, Wellpath employee Raul Rodan Estela E-signed a Wellpath "Staff Referral Form – Medical" requesting a referral with a "Mid-level Provided" for Mr. Hua for

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

"Routine" medical care with the basis for the referral being "IM is exhibiting paranoia around taking meds", with "IM" meaning inmate. This form was subsequently E-signed by Wellpath supervisory staff Christy Waudby at 9:55 am on November 24, 2023. Unfortunately, Mr. Hua was already deceased by the time Ms. Waudby got around to signing this form.

85. Also on November 24, 2023, Wellpath employee Raul Rodan Estela E-signed a Wellpath "Staff Referral Form – Mental Health" requesting a referral with a "MH Professional" for Mr. Hua for "Routine" mental health care with the basis for the referral being "IM exhibits paranoid behavior around taking medications. Advise Lisa, but he most likely need a MH evaluation".

86. On November 24, 2023, at 7:44 am, an inmate pressed the emergency button in the C unit (also referred to as "C tank" herein) of the Annex in the Yakima County Jail. The inmate stated that another inmate needed to be removed from the unit for his safety. The inmate being referenced that needed to be removed was Hien Hua.

87. Prior to entering C tank, YCDOC officers discussed how it appeared that Mr. Hua was having mental health issues.

88. At approximately 7:46:00 am, YCDOC Officer Brulotte, YCDOC Corporal Cooley, and YCDOC Officer Gil entered C tank. Officer Brulotte motioned for Mr. Hua to leave the unit, to which he declined. However, it was clear to YCDOC officers that Mr. Hua did not understand why they were there, nor why they were telling him to leave C tank.

89. When YCDOC officers approached Mr. Hua, he was sweating, looked pale and seemed paranoid.

90. YCDOC officers did nothing to de-escalate the situation. Instead YCDOC Officers began slowly surrounding Mr. Hua as if he was prey.

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

91. At 7:46:50 am, according to YCDOC surveillance video, approximately 50 seconds after entering C tank, Corporal Cooley sprayed pepper spray directly in the face of Mr. Hua. Within the next few seconds, Corporal Cooley sprayed pepper spray at Mr. Hua at least two more times.

92. Mr. Hua grabbed a cleaning rag off a table and attempted to back away from the YCDOC Officers.

93. YCDOC officers continued circling Mr. Hua.

94. At 7:46:59 am, Mr. Hua ran in between the YCDOC officers attempting to get away from them and slammed his shin into a metal chair around one of the C tank tables, causing Mr. Hua to fall to the ground.

95. Officers quickly moved in around Mr. Hua, and at 7:47:08 am grabbed Mr. Hua and tackled him to the ground.

96. At no point up to being physically contacted and tackled by YCDOC officers did Mr. Hua make any aggressive actions. The only actions Mr. Hua took were clearly designed to avoid contact with YCDOC officers.

97. All statements by Defendants that Mr. Hua displayed aggression, acted in an aggressive fashion, or indicated in any way that he would be aggressive towards YCDOC officers are a complete fabrication and lie designed to cover up the misdeeds of Defendants as discussed herein. This fact is confirmed by Defendant Yakima County's own surveillance video of this incident.

98. After tackling Mr. Hua, YCDOC officers worked to flip Mr. Hua onto his stomach. Once accomplished, officers held Mr. Hua down with their body weight by putting knees on Mr. Hua's back and/or neck pressing Mr. Hua's neck or chest onto the concrete floor, thereby

COMPLAINT
- 20

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

restricting Mr. Hua's ability to breathe and putting additional pressure on his heart. YCDOC officers kept almost their entire weight on Mr. Hua including one YCDOC officer keeping most of his weight either on Mr. Hua's neck or upper back for approximately three minutes. During this time, YCDOC officers applied two sets of handcuffs to Mr. Hua's wrists behind his back, and shackles to Mr. Hua's feet.

99. At 7:49:50 more YCDOC officers arrived carrying chains.

100.     At 7:50:30, the YCDOC officer finally removed his weight from Mr. Hua's back/neck and YCDOC officers dragged Mr. Hua forward a few feet (still prone), and began attaching chains to the handcuffs and shackles. During this chaining process, multiple YCDOC officers placed their knees and/or bodyweight on Mr. Hua's back restricting Mr. Hua's breathing. If not already accomplished YCDOC officers handcuffed Mr. Hua's hands behind his back, placed shackles on Mr. Hua's ankles, and attached the handcuffs and shackles with a chain.

101.     At no point throughout this process from 7:46-7:54 am, did Mr. Hua initiate aggressive contact with officers nor verbally or physically indicate that he wanted to, or was going to fight YCDOC officers. In fact, Mr. Hua's physical actions were exclusively defensive, including crossing his arms over his chest, holding his hands up with his palms out facing the officers, and continuously backing away from YCDOC officers.

102.     During parts of the chaining process from approximately 7:51-7:54 am, multiple YCDOC officers at a time were putting body weight on Mr. Hua's back while Mr. Hua was prone on the concrete floor. This restricted Mr. Hua's breathing, put unnecessary pressure on Mr. Hua's heart.

COMPLAINT
- 21

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

103.    During the process of the attack by YCDOC officers on Mr. Hua, Mr. Hua stated that he

was having trouble breathing, was observed having trouble breathing, and frantically begged

for help.

104.    Also during this process of the attack by YCDOC officers on Mr. Hua, YCDOC officers

chocked Mr. Hua by pushing on his neck and/or chin with their knees and/or other body parts.

All of these actions discussed herein restricted Mr. Hua's breathing constituted an assault and

battery and were the direct and proximate cause of Mr. Hua's subsequent death.

105.    While in C tank, it was obvious to the other inmates that Mr. Hua had mental health issues

as Mr. Hua didn't appear to sleep, would talk to, and argue with himself and generally did not

understand tank etiquette.

106.    At 7:54:42, YCDOC officers picked Mr. Hua up with one officer holding Mr. Hua under

each elbow which was twisted behind Mr. Hua's back, and two other officers holding the chain

and/or Mr. Hua's legs and began carrying Mr. Hua out of C tank.

107.    YCDOC officers chose to use the extremely painful process for Mr. Hua of carrying him

with all his weight being carried by his elbows, handcuffs, and the shackles on his ankles. This

method for transporting Mr. Hua was unnecessary, reckless, painful, dangerous, and

indifferently cruel.  YCDOC officers could and should have used a different method of

transport such as a restraint chair.  However, YCDOC officers did not bring in the restraint

chair until after Mr. Hua was in need of resuscitation.

108.    YCDOC Officer could and should have seen if Mr. Hua was willing to walk once cuffed

and shackled but did not even attempt this option.

109.    Carrying Mr. Hua as they did, constituted an assault and battery.

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA  98902
Phone (509) 452-8120 • Fax (509) 454-5011

110.    YCDOC Officers knew, or should have known that, following their escalation of this incident from a transport to a struggle, a restraint chair or allowing Mr. Hua to walk were the only safe methods to transport Mr. Hua.

111.    On November 24, 2023, sometime at or after 7:45 am, Wellpath employee Kathleen Silverstein responded to C tank for the incident discussed herein with Mr. Hua. When she arrived, Mr. Hua was being carried out of the cellblock by his arms and by a chain connected to shackles on his legs as discussed herein. While Mr. Hua was moving, he was non-verbal.

112.    During transport, Ms. Silverstein observed one officer kick Mr. Hua in the lateral right chest and another officer punch the posterior left calf. Ms. Silverstein stated "hey, stop" to the guards in attempt to stop their assault and battery on Mr. Hua.

113.    Ms. Silverstein next observed the officers place Mr. Hua on his stomach. She was then asked to look at one of the officer's fingers which the officer stated got caught in the chain. While assessing the finger, someone stated "hey nurse, he's not moving."

114.    Upon approaching Mr. Hua, Ms. Silverstein noticed that he was not moving, and upon turning him onto his back, Ms. Silverstein noticed that Mr. Hua's lips were dusky, he was not breathing, and he had no pulse. Ms. Silverstein then began CPR.

115.    At 8:01 am, backup for Ms. Silverstein arrived. Ms. Silverstein asked Wellpath employee, LPN "Mike" if Mr. Hua was diabetic, to which he responded "no."

116.    At approximately 8:16 am City of Yakima Firefighters/EMT's Advanced Life Systems ambulance (ALS) arrived and took over CPR from Defendants Yakima County's and Wellpath's personnel. ALS established an I.V. and began administering epinephrine.

117.    At approximately 8:27 am Mr. Hua had recovered a pulse, and ALS began transporting him at 8:33 am.

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

118. Mr. Hua passed away prior to reaching the hospital.

119. On November 28, 2023, at 10:00 am, Jeffrey M. Reynolds, MD, a contract Forensic Pathologist for Defendant Yakima County conducted an autopsy on Mr. Hua.

120. Prior to conducting the autopsy, Defendants mislead, and/or lied to Dr. Reynolds about the events leading up to Mr. Hua's death and failed to provide him with critical information about Mr. Hua's death such as how:

    a. There was an extensive struggle in C tank prior to the transport;

    b. Mr. Hua was held prone on the concrete floor with significant weight on his back and/or neck for several minutes just prior to transport;

    c. Mr. Hua was carried during the transport and the method by which he was carried; and

    d. Mr. Hua was beaten by YCDOC officers immediately preceding his going into cardiac arrest.

121. This critical information was not provided to Dr. Reynolds until several months later by Seattle Times reporter Daniel Beekman who was investigating Mr. Hua's death.

122. This failure to provide Dr. Reynolds with critical information about Mr. Hua's death was part of the coverup conducted by Defendants.

123. Later this same day, Dr. Reynolds issued his first Autopsy Report which listed the mechanism of death as "acute cerebral hypoxia" and the manner of death as "accidental".

124. On December 1, 2023, Dr. Reynolds issued an amended Autopsy Report listing the mechanism of death as "acute cerebral hypoxia" and the cause of death as "natural".

125. Following this amended Autopsy Report, Yakima County Coroner James Curtice issued an Incident Report for Mr. Hua's death, which was given case number 23-725. This incident report listed the cause of death as "Cardiac Arrhythmia, Athersclerotic Cardiovascular Disease,

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

with contributing conditions of hypertension and diabetes. The manner of death was listed as natural.

126. Within Mr. Curtice's Incident Report, he included a narrative. The entirety of Mr. Curtice explanation for the events leading to Mr. Hua's death, where based on a statement from Detective Mark Lewis who, according to Mr. Curtice, advised him that "Mr. Hua was not cooperating with Officer's at the Yakima County Jail. Mr. Hua then collapsed."

127. On November 24, 2023, at 9:35 am, following Mr. Hua's death, City of Moxee Police Lieutenant Mark Lewis, a team leader for the Yakima Valley Special Investigations Unit (YVSIU) called City of Yakima Detective Drew Shaw and informed him that a male inmate at the Yakima County Jail died after a physical altercation with YCDOC officers. Lieutenant Lewis requested that Detective Shaw lead the investigation, which he agreed to do.

128. Detective Shaw then called fellow YVSIU members YPD Detective Lukas Hinton, and YPD Detective Kevin Cays who also agreed to respond to the Yakima County Jail.

129. Upon arrival at the Yakima County Jail at 10:45 am YVSIU began their investigation, which consisted of the following actions:

a. Brief and cursory look over the front of Mr. Hua's body;

b. Interviews with ALS crew;

c. Photographing involved YCDOC officers;

d. Review of surveillance video of the confrontation in C tank;

e. Attempting to recover the spit mask that YCDOC officer had already thrown away;

f. Collected Corporal Cooley's pepper spray can;

g. Notified Mr. Hua's family about his death;

h. Attended Mr. Hua's autopsy; and

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

i.   Reviewed reports from Mr. Hua's booking.

130.   According to YVSIU reports, they interviewed no inmates in the jail, interviewed none of the involved YCDOC officers aside from an extremely brief introductory summation from Sergeant Freeburg.

131.   In sum, YVSIU conducted an extremely cursory review with no legitimate investigation. In no way, shape, or form, did YVSIU conduct a homicide, potential homicide investigation, or even a possible assault investigation.

132.   On January 18, 2024, following this lackluster quasi-investigation by YVSIU, Detective Shaw filed the final YVSIU report which he concluded the investigation stating:

> "[b]ased on the above review, which included corrections officers' reports, surveillance footage from the Yakima County Jail and autopsy reports, it appears that minor force was used by officers just prior to Mur. Hua's death.  Please see attachments in the "Files" section of the case.
>
> This case will be forwarded to the Yakima County Prosecutor's Office for review.

133.   YVSIU promptly forwarded the YVSIU investigative file to the Yakima County Prosecutor's Office.

134.   Yakima County Prosecuting Attorney Joseph Brusic, who's job it is to review YVSIU reports and make findings, did nothing with this report.  He made no findings, nor issued any public statements regarding Mr. Hua's death at the hands of Defendants.

135.   Mr. Brusic has entirely failed the citizens of Yakima County and the State of Washington by pretending that Mr. Hua's life did not matter and was not even worth Mr. Brusic's time review the YVSIU file and issue a brief statement.

136.   Mr. Brusic's goal by ignoring Mr. Hua's death is to perpetuate Defendants' attempted coverup of their actions which caused Mr. Hua's death.

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA  98902
Phone (509) 452-8120 • Fax (509) 454-5011

137.    On February 14, 2024, Yakima County Department of Corrections completed an Internal Affairs Investigation Report (IA Report) authored by Sergeant Blake of the Yakima County Department of Corrections.

138.    This IA Report includes an alleged timeline of events.  However, there are very significant inaccuracies in this chronology.  In addition, the video analysis has numerous inaccuracies which are clearly designed to justify Defendant's actions and to make Mr. Hua seem to be at fault for Defendant's deplorable actions as discussed herein.  For example, Sgt. Blake states that in the surveillance video at 7:46.37 am, "Hua's hands are in fists just above his waistline…"  This statement is patently false.  At no point through the confrontation did Mr. Hua have his hands in fists.  The only time his hands were closed at all was when he had his hands together, or when he was holding something—such as the rag Mr. Hua used to wipe his face and eyes.

139.    Throughout this IA Report, Sergeant Blake makes a concerted effort to ignore negative facts and clear policy violations committed by YCDOC officers.  Sergeant Blake further attempts to discount the testimony of Nurse Kathleen Silverstein who observed and was appalled by the actions of YCDOC officers and the inmates who heard and observed that Mr. Hua was having trouble breathing.

140.    Sergeant Blake makes a specific point in trying to discredit the inmate statements and claims that there were "a couple of the interviews that that were simply untrue."  Conveniently, Sargeant Blake failed to give a single example of anything untrue stated by inmates aside from the inmates allegedly not helping Mr. Hua with phone calls, etc. the way some claimed they did.  In addition, Sgt. Blake claims to have gone through the video and claims that his analysis of the video does not support inmate statements about knees on Mr. Hua's head or neck.  As

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA  98902
Phone (509) 452-8120 • Fax (509) 454-5011

he consistently did in his report, Sgt. Blake makes inaccurate statements as the video does support there being knees and weight on all parts of Mr. Hua, including his upper extremities.

141.    In general, Sgt. Blake's assessment of the video demonstrates extreme bias, and his own analysis and observation is extremely inaccurate, with every one of the numerous inaccuracies all being in favor of YCDOC officers.  Thus, Sgt. Blake's entire report lacks credibility and is nothing more than an internal coverup.

142.    The lack of credibility from Sgt. Blake's report can be summed up with the following example.  In the second full paragraph of page 49 of the report, Sgt. Blake states, "[a]t 7:47:02, he can be seen in a bladed stance, slightly crouched with his hands extended in front of him, and elbows bent.  This bladed stance is commonly recognized as a pre-attack indicator and is used in sports and martial arts as an attack position.  Gil's right hand is extended, palm down, toward Hua, in a non-aggressive gesture commonly used to try to get someone to calm down."  This statement by Sgt. Blake shows the steps taken to mislead and protect the Defendants. Everything in this statement from Sgt. Blake is either a complete fabrication, or a grave distortion of the truth.  The truth is as follows: At 7:46:59, as Mr. Hua runs between officers while attempting to escape from them, he runs into a fixed metal stool and falls down.  While on the ground and while getting up, Mr. Hua has his left hand out, palm down, the entire time in the universal language of "please stay away from me".  At 7:47:02, Mr. Hua gets up.  The "bladed stance" that Sgt. Blake claims is an indicator of attack, is nothing more than Mr. Hua gathering himself up from the ground and lasts for less than one second before Mr. Hua begins backing up again while alternating between wiping his face and keeping his hands out, palms down.  In other words, in Sgt. Blake's mind, if you pause a video you can take the paused video

COMPLAINT
- 28

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA  98902
Phone (509) 452-8120 • Fax (509) 454-5011

as an example of something, even if the video while playing at real life speeds clearly demonstrates that what you are claiming has no basis in fact.

143.    Sgt. Blake further claims Corporal Cooley's use of pepper spray was "reasonable in the circumstances" because Corporal Cooley "considered Hua's body language and movements to be pre-attack indicators of Hua's intent to become violent with them." This statement has zero basis in fact as Mr. Hua did nothing except attempt to stay away from YCDOC officers right up to the point where they jumped him. In fact, Mr. Hua was backing away from Corporal Cooley the entire time while Corporal Cooley moving towards Mr. Hua and while Corporal Cooley was spraying the pepper spray at Mr. Hua. The claim that Mr. Hua was showing pre-attack indicators is a complete fabrication intended to do nothing more than cover-up the truth. The fact that Sgt. Blake includes this claim in his report as if it has credibility once again demonstrates the lack of credibility in Sgt. Blake's report.

144.    Sgt. Blake's further attempts to claim that YCDOC officers complied with policy when carrying Mr. Hua by the chain and delivery blows to a fully handcuffed, shackled and hogtied person. This claim is false.

145.    YCDOC officers committed numerous policy violations throughout Mr. Hua's time in the Yakima County Jail including, but not limited to:

a. Using custody restraints instead of clinical restraints on Mr. Hua (YCDOC Policy 511.1.1);

b. Using restraints that caused undue physical discomfort and restricted blood flow (YCDOC Police 5.11.3(a));

c. Placing Mr. Hua facedown while in restraints (YCDOC Policy 5.11.3(b));

d. Failing to use the Wrap Restraint System (YCDOC Policy 5.11.10);

e. Carrying Mr. Hua by the chain attached to his shackles (YCDOC Policy 5.11.10.3(a));

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

f. Failing to exercise precautions when Mr. Hua stated and demonstrated his difficulty breathing (YCDOC Policy 511.10.4(c));

g. YCDOC officers observing the objectively unreasonable use of force on Mr. Hua failed to intercede (YCDOC Policy 510.3.2);

h. Using force when force was not required (YCDOC Policy 510.3.1);

i. Failing to use de-escalation techniques (YCDOC Policy 510.3.3);

j. Improper use of projectile chemical agents (YCDOC Policy 510.4.3);

k. Using force when there was no imminent threat to safety or security (YCDOC Policy 510.5);

l. Failure to use reasonable care when using force (YCDOC Policy 510.11).

146.    On July 18, 2024, at approximately 10:15 am, Seattle Times reporter Daniel Beekman emailed Dr. Reynolds stating: "Sorry for missing your call just now.  In case it's helpful, here are some relevant video clips from the minutes before Mr. Hua became unresponsive."

147.    The video clips referenced by Mr. Beekman were jail surveillance videos showing the struggle and beating of Mr. Hua that led to Mr. Hua's death.

148.    On July 18, 2024, at 5:03 pm, Dr. Reynolds emailed Mr. Beekman.  In this email, Dr. Reynold's stated:

> "Daniel:
> Thanks for the video.  I'm still waiting for jail to respond, so this speeds things up.
> 1) Everything you told me confirmed by video.  Physical struggle with multiple officers begins and lasts for over 9 minutes (time he's hogtied). He is still struggling after that, until about a minute after he's place on floor in hall.  Position does indeed contribute to respiratory acidosis to worsen his already present metabolic acidosis from prolonged heavy exercise (that's why you pant – to blow off more $CO_2$, which is an acid in solution[carbonic acid]).
> That's when he starts to die, for sure (maybe earlier, no way to really tell without ECG).

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA  98902
Phone (509) 452-8120 • Fax (509) 454-5011

2) NO WAY that constitutes a "brief struggle" as I was told. No one sought to correct my error. IF my medical hypothesis was correct, he would have been dying in under 2 minutes, and probably under one.

3) So, obviously, my 'manner of death' is wrong. It's certainly 'accidental' but video sure makes 'negligent homicide' surface. They took a long damn time to realize he was dying (probably happy he wasn't fighting anymore; over ten minutes of wrestling is tough work). As an aside, collegiate/olympic wrestling matches are three 2-minute periods, to avoid acidosis in supremely conditioned men. For Mr. Hua it would be way less time to go acidotic.

4) I have some thinking to do, but 'Natural' as a manner of death is history. Amended report out tomorrow.

My thanks for doing a superb job as a reprter. Tenacity pays off. True data is unbeatable.(although denial seems to still be popular)

Sincerely,<br>Jeffrey M. Reynolds"

149. On July 18, 2024, after receiving and reviewing video of the incidents leading up to Mr. Hua's death, Dr. Reynolds filed a final amended Autopsy Report changing the cause of Mr. Hua's death to Negligent Homicide.

150. In this final Autopsy Report, Dr. Reynolds stated:

"ADDENDUM (7/18124): I have viewed jailhouse videos of actual struggle for first time. Length and severity of struggle makes my original opinion of "natural death" untenable (i.e. wrong). Prolonged struggle induces metabolic acidosis and final position of bound, prone posture causes increasing respiratory acidosis. Each of these greatly increases risk of cardiac failure and/or dysrhythmia, and advanced extent of underlying myocardial and cardiovascular diseases virtually guarantees it. Also, 10+ min. length of full-effort struggle with multiple officers means that whatever my medical opinion of severity of ongoing cardiac disease, deceased obviously capable of lengthy heavy exercise and his demise, without struggle, was not imminent. This was not "a brief struggle". It took a long time for officers to notice that deceased ceased struggling for very severe medical reasons.

Length of violent struggle may even explain extent of pulmonary edema at time of death.

151. Following this final amended Autopsy Report, the Yakima County Coroner, who is an agent of Defendant Yakima County took no action to change the official cause of death.

COMPLAINT
- 31

152.    In July 2024, Yakima Coroner James Curtice was addicted to cocaine and fentanyl and was stealing drugs off of corpses to feed his addiction. Curtice would later overdose on cocaine and fentanyl in his office approximately a month after Reynolds changed the Hua manner of death to negligent homicide. Mr. Curtice is currently being prosecuted for criminal offenses related to these actions.

153.    Following this final Amended Autopsy Report, no further internal investigation was conducted by YCDOC, nor was the original internal investigative report altered despite the report relying heavily on Dr. Reynold's now disclaimed prior conclusion for cause of death.

154.    Following this final Amended Autopsy Report, SIU has conducted no further investigation.

155.    Following this final amended Autopsy Report, nor at any point prior, has Yakima County Prosecuting Attorney Joseph Brusic, the self-proclaimed head law enforcement agent of Yakima County taken any action to address Mr. Hua's death.

156.    Mr. Brusic's actions in this case are directly contrary to the actions he took to coverup criminal actions by his personal friend, and fellow agent for Yakima County, James Curtice.

157.    Yakima County Coroner James Curtice's refusal to change the manner of death was a quid pro quo with Mr. Brusic and Yakima County for Mr. Brusic's efforts to cover up Mr. Curtice's multiple criminal actions.

158.    These failures to act by Defendant Yakima County are all part of the attempted coverup by Defendants of Defendants' culpability for Mr. Hua's death.

159.    Holding people in the prone position, particularly when cuffed behind their back is dangerous and should not be done—information which was known to Defendants at the time of, and leading up to Mr. Hua's death.

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

160.    All Yakima County employees were acting within the course and scope of their employment and authority at all times at issue herein.

161.    Yakima County is responsible for all actions of its employees discussed herein under the doctrine of respondeat superior.

162.    Plaintiff Loan Duong is the legal representative of Hien Hua authorized to pursue the claims contained herein.

163.    During all times at issue herein, Defendants Yakima County (through YCDOC) and Wellpath had insufficient and/or inadequate medical staff to deal with medical issues in the Yakima County Jail.

164.    During all times at issue herein, Defendants Yakima County (through YCDOC) and Wellpath had insufficient and/or inadequate mental health staff to deal with mental health issues in the Yakima County Jail.

165.    Following Mr. Hua's death on November 24, 2024, Defendant Yakima County has made a concerted effort to cover up Defendants' actions that caused Mr. Hua's death.

## VI. CAUSES OF ACTION

### A. Plaintiff's first cause of action: Negligence and gross negligence (all defendants)

166.    Each of the Paragraphs of this Complaint is incorporated here as if fully stated in this section.

167.    Defendants owed a duty of care to Hien Hua.

168.    Through their negligent and/or grossly negligent conduct, Defendants breached that duty in a multitude of ways, including, but not limited to:

a.    Failing to provide Mr. Hua with a safe housing environment;

COMPLAINT
- 33

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

b.  Failing to get Mr. Hua evaluated for his medical conditions upon his booking in the Yakima County Jail;

c.  Failing to get Mr. Hua evaluated for his mental health conditions upon his booking in the Yakima County Jail;

d.  Failing to appropriately train employees to deal with people who have serious medical conditions;

e.  Failing to appropriately train employees to deal with people who have serious mental health conditions;

f.  Physically abusing Mr. Hua at the time of his booking in the Yakima County jail;

g.  Using pepper spray on Mr. Hua instead as opposed to appropriate de-escalation techniques designed for people with mental health conditions;

h.  After pepper spraying Mr. Hua, further escalating the situation by tackling Mr. Hua and having up to eight guards struggle with Mr. Hua and physically hold Mr. Hua down prone on the concrete floor while hogtying Mr. Hua thereby exacerbating Mr. Hua's medical conditions;

i.  After holding Mr. Hua prone with weight on his upper chest and/or head and neck for several minutes, Defendants carried Mr. Hua by his arms stretched behind his back, and by the chain connected to shackles around Mr. Hua's ankles causing Mr. Hua extreme and unnecessary pain and physical injuries;

j.  After carrying Mr. Hua in a painful and physically damaging fashion, by beating Mr. Hua when he did not fully cooperate with this painful and injurious transport process;

k.  By holding Mr. Hua on the concrete floor in the prone position for a second time during which process Mr. Hua ceased breathing;

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

l.  By violating various jail policies throughout this process as discussed herein;

m.  By violating reasonable jail standards of care throughout this process;

n.  Using various methods to cover up Defendants' involvement in Mr. Hua's death;

169.  This tortious conduct by Defendants was the direct, actual and proximate cause of Mr. Hua's death as well as direct, actual, and proximate cause of immense emotional hardship to Plaintiff along with financial hardship for which Plaintiff is seeking compensation in an amount to be proven at trial.

170.  Defendant's dramatically increased the damages of their negligence and/or gross negligence by attempting to conduct an extensive coverup of their actions discussed herein including, but not limited to:

a.  Failing to conduct a legitimate internal investigation into Mr. Hua's death—an internal investigation that within the final internal investigative report included attempts to coverup what actually occurred, along with multiple blatant false statements about what actually occurred.

b.  Misleading Dr. Reynolds by providing inaccurate information as to the events leading up to Mr. Hua's death thereby obtaining an inaccurate autopsy report;

c.  Misleading Mr. Hua's family by providing inaccurate information as to the events leading up to Mr. Hua's death, thereby making it impossible for Plaintiff to obtain an independent autopsy on Mr. Hua;

d.  Refusal by County Coroner James Curtice to reconsider the cause of death despite the cause of death being changed by Defendants' own forensic pathologist Dr. Reynolds;

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

e. Refusal by County Prosecuting Attorney Joseph Brusic to conduct a criminal investigation into whether criminal actions occurred by Yakima County Jail staff as discussed herein or to even review the YVSIU quasi-investigation.

**B. Plaintiff's second cause of action:  Negligent hiring and supervision (Wellpath LLC and Yakima County)**

171. Each of the Paragraphs of this Complaint is incorporated here as if fully stated in this section.

172. Defendant's have a duty to exercise reasonable care in hiring, supervision, and retention of staff who provide medical services for and all detention services for people housed in the Yakima County Jail.

173. In all time periods at issue here, Defendants' retained multiple employees who were incompetent and unfit for their jobs as demonstrated by their actions discussed herein.

174. Defendants knew or should have known that their employees were unfit and/or incompetent.

175. Defendants knew or should have known that their employees were not following YVDOC policies and/or NCCHC Jail Standards.

176. This failure by Defendants to exercise reasonable care in hiring, supervision, and retention of employees was the direct, actual and proximate cause of Mr. Hua's death as well as direct, actual, and proximate cause of immense emotional hardship to Plaintiff along with financial hardship for which Plaintiff is seeking compensation in an amount to be proven at trial.

177. Defendant Yakima County dramatically increased the damages of its negligence in hiring, supervision, and retention of staff by attempting to conduct an extensive coverup of their actions discussed herein.

**C. Plaintiff's third cause of action: Assault and Battery on November 18, 2023 (Yakima**

COMPLAINT
- 36

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA  98902
Phone (509) 452-8120 • Fax (509) 454-5011

**County, YCDOC Officer C. Cass, YCDOC Officer J. Nichols, YCDOC Officer J. Contreras)**

178.  Each of the Paragraphs of this Complaint is incorporated here as if fully stated in this section.

179.  The conduct by Yakima County Jail staff described herein constituted intentional and malicious tortious assault causing Mr. Hua apprehension imminent, harmful, nonconsensual, and offensive contact.

180.  The conduct by Yakima County Jail staff described herein constituted intentional and malicious tortious battery, resulting in harmful, nonconsensual, and offensive contact to Mr. Hua.

181.  Defendants' actions caused Mr. Hua pain, suffering, and emotional trauma for which Defendants are liable for which Plaintiff is seeking compensation in an amount to be proven at trial.

**D.  Plaintiff's fourth cause of action: Assault and Battery on November 24, 2023 (Yakima County, YCDOC Officer Brian O. Brulotte, YDCOC Corporal Todd Ernest Cooley, YCDOC Officer Alejandro Roman Estrada, YDCOC Officer Damian Gil, YCDOC Officer Martin Dale Gohl, YCDOC Officer Erick Gonzalez-Guzman, YCDOC Officer Damian Marquis Spencer, YCDOC Officer Gil Damian; YCDOC Sergeant Freeburg)**

182.  Each of the Paragraphs of this Complaint is incorporated as if fully stated in this section.

183.  The conduct by Yakima County Jail staff described herein constituted intentional and malicious tortious assault causing Mr. Hua apprehension imminent, harmful, nonconsensual, and offensive contact.

184.  The conduct by Yakima County Jail staff described herein constituted intentional and malicious tortious battery, resulting in harmful, nonconsensual, and offensive contact to Mr. Hua which was the direct and proximate cause of his death.

**HALL and GILLILAND**
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

185.  Defendants' actions caused Mr. Hua pain, suffering, and emotional trauma for which Defendants are liable for which Plaintiff is seeking compensation in an amount to be proven at trial.

E.  **Plaintiff's fourth cause of action: Violations of 42 USC § 1983—8th and 14th Amendment (all Defendants)**

186.  Each of the Paragraphs of this Complaint is incorporated here as if fully stated in this section.

187.  Acting under color of state law, Defendants maliciously, recklessly, willfully, wantonly, or with deliberate indifference to Mr. Hua's rights under the Eighth and/or Fourteenth Amendments of the U.S. Constitution in one or more of the following ways:

a.  In failing to ensure that Mr. Hua was seen by a qualified medical professional;

b.  In failing to ensure that Mr. Hua was seen by a qualified mental health professional;

c.  In failing to property treat Mr. Hua's serious medical needs;

d.  In failing to properly treat Mr. Hua's serious mental health needs;

e.  In failing to ensure that the Yakima County Jail had proper medical staffing;

f.  In failing to ensure that the Yakima County Jail had proper mental health staffing;

g.  In failing to ensure that Mr. Hua was housed in a unit that would not place him in danger;

h.  By causing physical harm to Mr. Hua through assault and battery on November 18, 2023, and November 24, 2023.

188.  As a direct result of the actions and/or inactions of Defendants as discussed herein, Mr. Hua suffered damages in that he endured and suffered severe physical and emotional trauma leading up to, and ultimately resulting in his death.

189.  As a direct result of the actions and/or inactions of Defendants as discussed herein, Plaintiff has endured and suffered severe emotional distress. Further, Plaintiff has been denied the love,

COMPLAINT
- 38

society and companionship of her son, Mr. Hua

190.    The actions of Defendants were recklessly indifferent to Mr. Hua's civil rights.

191.    Defendants callously disregarded Mr. Hua's physical and emotional safety, were recklessly indifferent to Mr. Hua's civil rights, and callously not only disregarded Mr. Hua's physical safety, but took affirmative actions causing him physical and emotional injury which ultimately led to his death.

192.    Based on Defendants' actions as discussed herein, Plaintiff seeks compensatory damages in an amount to be proven at trial and punitive damages should be awarded in whatever amount the jury deems appropriate.

193.    Plaintiff is entitled to her necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

F.    **Plaintiff's fifth cause of action:    Violations of 42 USC § 1983—8th and 14th Amendment (Yakima County and Wellpath LLC)—_Monell_ claims**

194.    Each of the paragraphs of this Complaint is incorporated here as if fully stated in this section.

195.    The actions that resulted in the deprivation of Mr. Hua's Eighth and/or Fourteenth Amendment rights as discussed were the following policies, customs or practices of Yakima County and Wellpath LLC:

a.    A policy, custom or practice of not having people with serious mental health needs seen by a qualified medical professional in a timely manner;

b.    A policy, custom or practice of not having people with serious mental health needs seen by a qualified mental health professional manner;

c.    A policy, custom or practice of providing insufficient medical coverage;

d.    A policy, custom or practice of providing insufficient mental health coverage;

HALL and GILLILAND
1111 West Yakima Avenue
Yakima, WA 98902
Phone (509) 452-8120 • Fax (509) 454-5011

e. A policy, custom or practice of hiring personnel indifferent to the medical needs of inmates;

f. A policy, custom or practice of hiring personnel indifferent to the mental health needs of inmates;

g. A policy, custom or practice of failing to ensure that employees of Yakima County and Wellpath had proper training in responding to the serious medical and/or mental health needs of inmates; and

h. A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical and mental health services for jail inmates.

196. The policies of defendants Wellpath, and Yakima County posed a substantial risk of causing substantial harm to Yakima County inmates. Wellpath, and Yakima County were aware of this risk.

197. As a direct result of the policies, customs or practices of Wellpath, and Yakima County, Hien Hua endured and suffered severe physical and emotional distress, his medical and mental health conditions were exacerbated, and he died from direct physical abuse from Defendants. Mr. Hua's mother has been denied his love, society and companionship. Mr. Hua's estate and Plaintiff incurred medical expenses and/or funeral expenses. Plaintiff and Mr. Hua's estate are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

198. The actions of defendants Wellpath and Yakima County were recklessly indifferent to the civil rights of Mr. Hua, and callously disregarded Mr. Hua's physical safety, and punitive damages should be awarded in whatever amount the jury concludes is appropriate.

199. Plaintiff is entitled to her necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

G. **Plaintiff's sixth cause of action: Wrongful Death (all Defendants)**

COMPLAINT - 40

200.    Each of the paragraphs of this Complaint is incorporated here as if fully stated in this section.

201.    Through negligence in action and/or knowledge, wrongful act, neglect, carelessness, unskillfulness or default, Defendant's actions were a substantial factor in bringing about Mr. Hua's death, and without these actions, Mr. Hua would not have died.

202.    Defendants are liable for these actions.

203.    Due to these actions, Plaintiff has suffered loss of the parent-child relationship and loss of companionship and seeks compensation for these damages in an amount to be proven at trial.

## VII. DAMAGES

204.    As a direct and proximate result of Defendants' tortious and unlawful conduct as described herein, Plaintiff in her own right will continue to suffer in the future the following damages:

a.    Past and future mental and emotional pain and suffering;

b.    The loss of comfort and companionship of her son, Mr. Hua;

c.    Loss of financial resources brought into the home by Mr. Hua.

205.    As a direct and proximate result of Defendants' tortious and unlawful conduct as described herein, Mr. Hua suffered, and Plaintiff claims the damages for the following damages:

a.    Mental anguish, pain, and terror caused by Defendants;

b.    Physical pain cause by Defendants;

c.    Past and future income;

d.    Loss of familial relationships;

e.    Permanent loss of life and all the positives that go with it.

## VIII.  JURY DEMAND

206.    Plaintiff hereby demands a jury trial.

COMPLAINT
- 41

## IX.  **PRAYER FOR RELIF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

207.    For orders of the court requiring Defendants to provide their employees with sufficient training to competently deal with inmates with physical and mental health issues in the future.

208.    For general and specific damages in an amount unknown but which will be proved at trial.

209.    Punitive damages;

210.    For attorney fees and costs as provided by any applicable provision of law.

211.    Declaring Defendants jointly and severally liable;

212.    Awarding any and all applicable interest on the judgment; and

213.    For such other and further relief as the court may deem appropriate.

DATED this 18th day of April, 2025.

Respectfully submitted,

Richard D. Gilliland, WSBA No. 40474
Counsel for Plaintiff

COMPLAINT
- 42

1

2

3

4

5

6

7    **IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
     **IN AND FOR THE COUNTY OF YAKIMA**

8    LOAN DUONG, personal representative for the
9    Estate of HIEN TRUNG HUA, Deceased,                    **NO.  25-2-01311-39**

10                              Plaintiff,
                                                            **NOTICE OF APPEARANCE**
     vs.
11
     WELLP ATH, LLC a Delaware Corporation;
12   YAKIMA COUNTY, a Washington State County;
     YCDOC Officer C Kass; YCDOC J. Nichols;
13   YCDOC Officer J. Contreras; YCDOC Officer
     Brian 0. Brulotte; YCDOC Officer Damian Marquis
14   Spencer; YCDOC Officer Erick Gonzalez-Guzman;
     YCDOC Officer Alejandro Roman Estrada;
15   YCDOC Corporal Todd Ernest Cooley; YCDOC
     Officer Martin Dale Gohl; YCDOC Officer Damian
16   Gil; YCDOC Sergeant Freeburg,

17                              Defendants.

18   TO:          LOAN DUONG, Personal Representative for the Estate of HIEN TRUNG HUA, Plaintiff

19
     AND TO:      RICHARD D. GILLILAND, Plaintiff's Attorney
20
     AND TO:      THE CLERK OF THE ABOVE-ENTITLED COURT
21

22          NOTICE IS HEREBY GIVEN that JOHN E. JUSTICE of Law, Lyman, Daniel, Kamerrer &

23   Bogdanovich, P.S. hereby make his appearance for and on behalf of defendants Yakima County,

24   YCDOC Officer C. Kass, YCDOC J. Nichols, YCDOC Officer J. Contreras, YCDOC Officer Brian O.

25   Brulotte, YCDOC Officer Damian Marquis Spencer, YCDOC Officer Erick Gonzalez-Guzman,

26

**NOTICE OF APPEARANCE– 1**
**Cause No.:  25-2-01311-39**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

YCDOC Officer Alejandro Roman Estrada, YCDOC Corporal Todd Ernest Cooley, YCDOC Officer Martin Dale Gohl, YCDOC Officer Damian Gil and YCDOC Sergeant Freeburg and requests that all further notices and pleadings, except original process, be served upon said defendants and its attorney at the address stated below.

Dated this 28th day of April, 2025.

LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.

*/s/ John E. Justice*

_____
John E. Justice, WSBA No. 23042
Attorney for Yakima County Defendants
P.O. Box 11880, Olympia, WA 98508
Phone:  (360) 754-3480 Fax: 360-357-3511
Email: jjustice@lldkb.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington that on this date, I caused to be electronically filed the foregoing document, and this Certificate of Filing & Service, and have mailed a copy of this filing to the following party via First Class U.S. Mail and email:

**Plaintiff's Attorney:**
Richard D. Gilliland
Hall and Gilliland PLLC
1111 W Yakima Ave Ste A
Yakima, WA 98902-3077
richard.gilliland@hallandgilliland.com

DATED this 28th day of April, 2025 at Tumwater, WA.

*/s/ Tam Truong*
Tam Truong, Legal Assistant

**NOTICE OF APPEARANCE– 2**
**Cause No.:  25-2-01311-39**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

## Case Information

25-2-01311-39 | LOAN DUONG vs WELLPATH, LLC et al

Case Number
25-2-01311-39

Court
Yakima

File Date
04/24/2025

Case Type
WDE Wrongful Death

Case Status
Active

## Party

Plaintiff
DUONG, LOAN

Active Attorneys▾
Lead Attorney
GILLILAND, RICHARD DANIEL
Retained

Defendant
WELLPATH, LLC

Defendant
YAKIMA COUNTY

Active Attorneys▾
Lead Attorney
Justice, John Edward
Retained

Defendant
YCDOC OFFICER C. KASS

Active Attorneys▾
Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

---

Defendant
YCDOC OFFICER J. NICHOLS

Active Attorneys ▾

Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

---

Defendant
YCDOC OFFICER J. CONTRERAS

Active Attorneys ▾

Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

---

Defendant
YCDOC OFFICER BRIAN O. BRULOTTE

Active Attorneys ▾

Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

---

Defendant
YCDOC OFFICER DAMIAN MARQUIS SPENCER

Active Attorneys ▾

Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

---

Defendant
YCDOC OFFICER ERICK GONZALEZ GUZMAN

Active Attorneys ▾
Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

---

Defendant
YCDOC OFFICER ALEJANDRO ROMAN ESTRADA

Active Attorneys ▾
Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

---

Defendant
YCDOC CORPORAL TODD ERNEST COOLEY

Active Attorneys ▾
Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

---

Defendant
YCDOC OFFICER MARTIN DALE GOHL

Active Attorneys ▾
Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

Defendant
YCDOC OFFICER DAMIAN GILL

Active Attorneys▾

Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

Defendant
YCDOC SERGEANT FREEBURG

Active Attorneys▾

Lead Attorney
Justice, John Edward
Retained

Attorney
Justice, John Edward
Retained

## Events and Hearings

| 04/24/2025 Summons and Complaint |
|---|
| 04/25/2025 Affidavit Declaration Certificate Confirmation of Service |
| 04/28/2025 Notice of Appearance |